UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CALVIN R. WILEY,

      Petitioner,                                    Civil Action No. 05-CV-70486

v.                                          HON. BERNARD A. FRIEDMAN

THOMAS BELL,

      Respondent.
                      /

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY

        Petitioner Calvin R. Wiley has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner, who is currently incarcerated at the Gus Harrison Correctional Facility in Adrian, Michigan, challenges his second-degree murder conviction. Petitioner raises three claims for habeas relief. Respondent argues that the claims are meritless and that one of the claims is procedurally defaulted. For the reasons stated below, the court shall deny the petition and decline to issue a certificate of appealability.

## I. Background

        Petitioner's conviction arises from the beating death of Kenneth Wideman. Late in the evening of September 5, 2000, Wideman stopped by the home of Al Jones in Detroit to ask to borrow $5.00. Jones did not have any money for Wideman, so Wideman left. Jones fell asleep. He was awakened sometime later by a noise coming from his front porch. Jones testified that he looked out his front window and saw petitioner and co-defendant Larry Wesley jumping up and down on Wideman about 15 or 20 times. Jones banged on the window. Petitioner and Wesley took Wideman

off the front porch. Jones opened his front door and heard a noise from Wideman that sounded like someone was choking him. Jones returned to his bed for about half an hour, then decided to look out his front window again. He saw the three men across the street from his house. Petitioner and Wesley were punching and jumping on Wideman. Wideman did not appear to be attempting to defend himself. Jones then saw the three men walking down the street side-by-side.

Teresa Perry testified that she was awakened by voices at approximately 2:00 a.m. on September 6, 2000. She looked out her window and saw petitioner, Wesley and Wideman talking. Suddenly, she saw that Wideman was on the ground and petitioner and Wesley were jumping and stomping on top of him.

Sarah Johnson, Wideman's grandmother, with whom Wideman lived, testified that, during the early morning hours of September 6, 2000, she heard a noise at her front door. She found Wideman slumped against the door. His clothes were ripped off and there was blood everywhere. She called 911 and Wideman was taken to the hospital.

Dr. Charles Edward Lucas, a surgeon, testified that he treated Wideman at Detroit Receiving Hospital. Dr. Lucas operated on Wideman to treat a severe laceration to the liver. A second operation was performed to remove a portion of his intestines. Petitioner died several days later. The medical examiner identified the cause of death was multiple blunt trauma.

## II.  Procedural History

Petitioner was convicted by a jury in Wayne County Circuit Court of second-degree murder. Petitioner and co-defendant Larry Wesley were tried before the same jury. On November 21, 2002, Petitioner was sentenced to 15-25 years imprisonment.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

> I. Defendant was deprived of his Ams. V and XIV rights of due process when photos of the victim were admitted into evidence.
>
> II. Defendant was deprived of his Ams. V and XIV rights of due process when the prosecutor injected improper references into his summation.

The Michigan Court of Appeals affirmed the conviction. *See People v. Wiley*, 2004 WL 787144 (Mich. Ct. App. Apr. 13, 2004).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, presenting the same claims presented to the Michigan Court of Appeals, as well as the following claim:

> Appellant Calvin Wiley was denied his state and federal right to a fair and impartial trial when the trial court denied his motion for a separate jury, admitted into evidence the incriminating statement of his co-defendant implicating Mr. Wiley without affording him an opportunity to confront his co-defendant in violation of *Crawford v. Washington*, issued March 8, 2004.

The Michigan Supreme Court denied leave to appeal. *See People v. Wiley*, 471 Mich. 886 (2004).

Petitioner then filed a petition for a writ of habeas corpus, presenting the same claims he presented to the Michigan Supreme Court. After filing the petition, he asked the court to stay further proceedings so that he could return to state court to exhaust an unexhausted claim. On July 7, 2006, the court issued an opinion and order granting that motion and administratively closing the case.

Petitioner then filed a motion for relief from judgment in the trial court, raising these claims:

3

> I. Defendant was denied his state and federal rights to a fair and impartial trial when the trial court denied his motion for a separate jury, admitted into evidence the incriminating statement of his co-defendant implicating defendant without affording him an opportunity to confront his accuser.
>
> II. Ineffective assistance of appellate counsel.

The trial court denied the motion. *See People v. Wiley*, No. 00-11010-01, 2004 WL 787144 (Wayne County Cir. Ct. June 12, 2007).

Petitioner raised the same claims in applications for leave to appeal to the Michigan Court of Appeals and Michigan Supreme Court. Both state appellate courts denied leave to appeal. *See People v. Wiley*, No. 281608 (Mich. Ct. App. Apr. 8, 2008); *People v. Wiley*, No. 136403 (Mich. Oct. 27, 2008).

This habeas corpus proceeding was then reopened. Petitioner raises the following claims:

> I. Petitioner was denied his federal right to a fair trial when the trial court denied his motion for a separate trial, admitting into evidence the incriminating statement of his co-defendant that implicated him without being afforded an opportunity to confront him in violation of *Crawford v. Washington*, 124 S. Ct. 1354 (2004) and its progeny.
>
> II. Petitioner was deprived of his Ams. V and XIV rights of due process when the prosecutor injected improper references to penalty in his summation and when asking the jury to put themselves in the shoes of the victim.
>
> III. Petitioner was deprived of his Ams. V and XIV rights of due process when photos of the victim were admitted into evidence.

4

### III.  Discussion

### A.  Legal Standards

28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (*quoting Williams*, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539

5

U.S. at 520-21; *see also Williams*, 529 U.S. at 409.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 131 S. Ct. 770, 789 (2011) (*quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).  "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 786-87 (internal quotation omitted).            Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  *See Williams,* 529 U.S. at 412.   Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002).  "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue."  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  Further, a federal habeas court must presume the correctness of state court factual determinations.  See 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption only with clear and convincing evidence.  *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## B.  Right of Confrontation

Petitioner argues his right of confrontation was violated because the trial court admitted into evidence his non-testifying co-defendant's incriminating statement.  The Confrontation Clause provides criminal defendants with the right to confront and cross-examine witnesses against them.  *See, e.g., Davis v. Alaska*, 415 U.S. 308, 315 (1973).  The constitutional right to confront adverse witnesses generally prevents a court from admitting an out-of-court statement against a criminal defendant.  *See California v. Green*, 399 U.S. 149, 155-58 (1970).  In *Bruton v. United States*, 391 U.S. 123 (1968), the United States Supreme Court ruled that the admission at a joint trial of a non-testifying co-defendant's confession to police which implicates the defendant violates the Confrontation Clause even if the trial court instructs the jury not to consider the incriminating statements in determining the defendant's guilt.  An exception to this rule is recognized when the co-defendant's confession "is redacted to eliminate not only the defendant's name, but any reference to his or her existence."  *Richardson v. Marsh*, 481 U.S. 200, 211 (1987).  In *Marsh*, the "confession was not incriminating on its face, and became so only when linked with evidence introduced later at trial."  *Id.*  The Court held that when the statement of a non-testifying co-defendant is not facially incriminating and the jury is given a limiting instruction, admission of the statement does not violate a defendant's right to confrontation.  *See id.* at 207-09.  In distinguishing this inferential incrimination from the direct incrimination presented in *Bruton*, the Court reasoned as follows:

> Where the necessity of such linkage is involved, it is a less valid generalization that the jury will likely not obey the instruction to disregard the evidence.  Specific testimony that 'the defendant helped me commit the crime' is more vivid that inferential incrimination, and hence more difficult to thrust out of mind.  Moreover, with regard to such an explicit statement the only issue is, plain and simply, whether the jury can possibly be expected to forget it in assessing the defendant's guilt; whereas with regard to inferential

7

> incrimination the judge's instruction may well be successful in
> dissuading the jury from entering onto the path of inference in the
> first place, so that there is no incrimination to forget.  In short, while
> it may not always be simple for members of a jury to obey the
> instruction that they disregard an incriminating inference, there does
> not exist the overwhelming probability of their inability to do so that
> is the foundation of *Bruton's* exception to the general rule.

*Marsh*, 481 U.S. at 208.

In the present case, co-defendant Wesley's police statement was carefully redacted to eliminate anything incriminating about petitioner.  No *Bruton* violation results when a co-defendant's statement does not expressly implicate a defendant in the charged offense because such a statement is not "powerfully incriminating."  *Vincent v. Parke*, 942 F.2d 989, 991 (6th Cir. 1991).  Indeed, *Bruton* is applicable only when a "codefendant's confession 'expressly implicat[es]' the defendant as his accomplice."  *Marsh*, 481 U.S. at 208 (*quoting Bruton*, 391 U.S. at 124, n.1).  Because co-defendant Wesley's statement did not implicate petitioner in the charged crime or any other crime, the admission of the statement did not violate the petitioner's rights under *Bruton*.

Petitioner also claims that admission of co-defendant Wesley's statement violated his Sixth Amendment rights under *Crawford v. Washington*, 541 U.S. 36, 54 (2004).  In *Crawford*, the Supreme Court held that the testimonial statement of a witness who does not appear at trial is inadmissible unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness.  Testimonial statements include preliminary hearing testimony, grand jury testimony, prior trial testimony, and statements made during police interrogations.  *See id.* at 54.

*Crawford*'s main concern was for a defendant's right "to be confronted with the witnesses against him."  541 U.S. at 42.  *Crawford* did not abrogate the Supreme Court's prior

8

holdings in *Bruton* or *Marsh*, which found no Sixth Amendment violation when the admitted statement is not facially incriminating. *See Crawford*, 541 U.S. at 57 (finding its decision consistent with other Confrontation Clause cases, including *Bruton*); *Marsh*, 481 U.S. at 206 ("Ordinarily, a witness whose testimony is introduced at a joint trial is not considered to be a witness 'against' a defendant if the jury is instructed to consider that testimony only against a codefendant"). Thus, while co-defendant Wesley's statement is testimonial, its admission did not violate the petitioner's confrontation rights because it did not implicate petitioner. Petitioner had no need for cross-examination because the testimonial evidence did not reference him or implicate him in any crime. *Crawford* is therefore inapplicable. *See, e.g., U.S. v. Akefe*, 2010 WL 2899805, at **25-26 (S.D.N.Y. July 21, 2010).

Moreover, even if the admission of Wiley's statement violated petitioner's rights under *Bruton* or *Crawford*, he is not entitled to relief. A constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 117-18 (2007) (confirming that *Brecht* standard applies in "virtually all" habeas cases). Violations of the Confrontation Clause and *Bruton* errors are subject to harmless error analysis. *See Delaware v. VanArsdall*, 475 U .S. 673, 684 (1986); *Schneble v. Florida*, 405 U.S. 427, 430 (1972); *Vasquez v. Jones*, 486 F.3d 135, 146 (6th Cir. 2007).

In the present case, the prosecution presented significant evidence of petitioner's guilt at trial. Given this evidence, and the non-incriminating nature of the co-defendant's statement, the court concludes that any error in admitting Wesley's statement was harmless beyond a reasonable doubt. Habeas relief is not warranted on this claim.

9

### C.  Prosecutorial Misconduct Claim

Petitioner next argues that habeas relief should be granted because the prosecutor engaged in misconduct by improperly referring to possible penalties in his closing argument and improperly asking the jury to put themselves in the victim's shoes.

Respondent argues that these claims are procedurally defaulted.  "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.  In the present case, the court finds that the interests of judicial economy are best served by addressing the merits of this claim.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012).  In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  This court must ask whether the decision of the Michigan Court of Appeals (which, despite finding the claims not properly preserved, nevertheless denied them on the merits) denying petitioner's prosecutorial misconduct claims "'was so lacking in justification that there was an error well understood an comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker*, 132 S. Ct. at 2155, (*quoting Harrington*, 131 S. Ct. at 786-87.

First, Petitioner argues that the prosecutor improperly referenced possible penalties in closing argument when he argued that petitioner should not be convicted of a misdemeanor:

> And I'm certainly not asking you for the misdemeanor of assault and battery, aggravated assault.  I don't want that.
>
> *   *   *
>
> This is murder in the second degree.  It's no misdemeanor.  This isn't assault with intent to commit great bodily harm.  It never has been.  It's murder in the second degree.

Tr., Vol. IV, 194, 198.

When a jury has no sentencing function, as was the case at petitioner's trial, it should "be admonished to 'reach its verdict without regard to what sentence might be imposed.'" *Shannon v. United States*, 512 U.S. 573, 579 (1994) (*quoting Rogers v. United States*, 422 U.S. 35, 40 (1975)).  The Supreme Court provided the following rationale for this well-established principle:

> The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor in our legal system between judge and jury.  The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged.  The judge, by contrast, imposes sentence on the defendant after the jury has arrived at a guilty verdict.  Information regarding the consequences of a verdict is therefore irrelevant to the jury's task. Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion.

*Id.*

The Michigan Court of Appeals' decision denying this claim is neither contrary to nor an unreasonable application of Supreme Court precedent.  The prosecutor did not refer specifically to the punishment petitioner would receive for each of the crimes under consideration by the jury.  Instead, he argued that the facts satisfied the elements of the more serious crime.  In

11

addition, the trial court cautioned the jury that their decision should not be influenced by the possible penalty and that it is the judge's responsibility to set the penalty. Even if the argument could be construed as referring to a possible penalty, the comment was isolated, did not tend to mislead the jury, did not prejudice petitioner and, therefore, did not infect the entire process with unfairness. Habeas relief is not warranted on this claim.

Second, petitioner argues that the prosecutor acted improperly in making the following argument: "I hope you never experience anything like this where you[r] brain is swollen, your organs are swollen, you're beaten to the point where it kills you . . . " (Tr., Vol. IV at 197.)

Generally, a prosecutor should not "make statements calculated to incite the passion and prejudices of the jurors." *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006) (internal quotations omitted). "'Closing arguments that encourage juror identification with crime victims are improper.'" *Wogenstahl v. Mitchell*, 668 F.3d 307, 333 (6th Cir. 2012) (*quoting Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008)). However, "'[n]othing prevents the government from appealing to the jurors' sense of justice or from connecting the point to the victims of the case.'" *Id.* (*quoting Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009)).

In the present case, the prosecutor's argument, read in context, is an attempt to convey to the jury the brutality of the crime, rather than an attempt to incite their passion and prejudices. Moreover, even if the comment was improper, it was isolated and did not deprive petitioner of a fair trial.

### D. Admission of Photographs of the Victim

12

Finally, petitioner argues that the trial court improperly admitted pre-autopsy photographs of the victim. The Michigan Court of Appeals held that the photographs were properly admitted, stating, in pertinent part:

> "The decision to admit or exclude photographs is within the sole discretion of the trial court." *People v Mills*, 450 Mich. 61, 76; 537 N.W.2d 909 (1995). Photographs need not be excluded merely because a witness can testify about the information contained in the photographs; photographs may also be admissible if they corroborate a witness' testimony. *Id.* The proper inquiry is always whether the probative value of the photographs is substantially outweighed by unfair prejudice. *Mills, supra*.
>
> Here, the photographs were relevant to consideration of the medical examiner's testimony that the victim's bruises were very recent, and Wiley's suggestion that the victim's injuries were from a prior incident. Furthermore, malice is an element of second-degree murder, *People v Goecke*, 457 Mich. 442, 464; 579 N.W.2d 868 1998), and the photographs were relevant to the question whether the injuries here were severe enough to permit such an inference. The fact that there was testimony regarding the victim's injuries and that the photographs were somewhat gruesome is not enough to preclude the evidence, and we are not convinced that the probative value of the photographs was substantially outweighed by unfair prejudice. *Mills, supra*. The trial court did not abuse its discretion in admitting the photographs.

*Wiley*, 2004 WL 787144, at *2.

It is well established that "'federal habeas corpus review does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (*quoting Louis v. Jeffers*, 497 U.S. 764, 780 (1990)). The Sixth Circuit has held that "[i]n a federal habeas corpus proceeding, it is not the province of a federal appellate court to review the decision of the state's highest court on purely state law." *Long v. Smith*, 663 F.2d 22, 23 (6th Cir. 1981). "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly*

13

*v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

   The petitioner has failed to show that the Michigan Court of Appeals' decision was contrary to or an unreasonable application of Supreme Court precedent or that the photographs' admission denied him his fundamental right to a fair trial. Accordingly, he is not entitled to habeas corpus relief with respect to this claim. *Accord Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005); *Frazier v. Huffman*, 343 F.3d 780, 789 (6th Cir. 2003); *Shacks v. Tessmer*, 9 F.App'x 344, 353 (6th Cir. 2001).

## IV.  Certificate of Appealability

   Federal Rule of Appellate Procedure 22 provides that an appeal in a habeas case may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings requires that the court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In the present case, the court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the court shall not issue a certificate of appealability. For the same reason, petition may not proceed on appeal *in forma pauperis*.

14

**V.  Conclusion**

For the reasons stated above

IT IS ORDERED that the petition for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that no certificate of appealability shall issue and that petitioner may not proceed on appeal *in forma pauperis.*

S/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

August 9, 2012

15